Margaret McConnell *v.* W. H. McConnell's Heirs.

[Abstract Kentucky Law Reporter, Vol. 4—897, as McConnell v. McConnell.]

### Husband and Wife—Wife's Property.

So long as the husband neglected to reduce the money and property of his wife to possession she might have applied to the chancellor and compelled him to make an equitable settlement out of the property; and since she might have done so by proper legal proceedings, there is no good reason why he might not voluntarily settle it upon her out of court.

### Wife's Separate Property.

Where a husband during his life did not reduce his wife's property to possession, but in pursuance to an agreement between them he disclaimed ownership and treated the property she received from her father's estate as her separate estate and never used or controlled it for his own benefit, after his death such property will be regarded as he regarded and treated it and it will remain as the separate property of the wife; and this is clearly so when there is sufficient property left by the husband to pay all creditors.

APPEAL FROM OHIO CIRCUIT COURT.

April 28, 1883.

OPINION BY JUDGE PRYOR:

This action was brought by the administrator of the estate of W. H. McConnell, who died intestate and without children, against his widow, heirs at law and creditors to settle the estate.

The widow, who has appealed from the judgment, sets up the following claims:

1. She alleges that she is entitled, as her separate estate, to certain personal property valued by her at $251, a list of which was filed with the report of the master commissioner.

2. She asks for judgment in the settlement for the sum of $318 in lieu of property to which as widow she was entitled to have set apart to her, which was not done by the appraisers.

3. It is alleged by V. P. Morris, who upon his petition was made a party defendant, that he purchased of one W. H. Morris a tract of seventy-six acres of land, upon which there was at the time of his purchase a balance of the purchase-money due by said W. H. Morris to his vendor, that suit was brought to recover the same, and judgment was rendered and the land sold for the debt amounting to $218.80, when W. H. Morris became the purchaser, but not being able to pay the debt the defendant, V. P. Morris, was compelled to pay off the debt himself, and to accomplish that object he made an arrangement with decedent, W. H. McConnell, to pay it for him and wait on him until he could pay the amount. That in pursuance of that arrangement W. H. Morris transferred his bid to decedent, to whom the deed for the land was made by the commissioner. He says that the deed was so made as security to decedent for the money advanced, under an agreement between them that when the money was refunded, he, decedent, would reconvey the land to Morris. In his answer defendant, V. P. Morris, averred his readiness to pay back the money, and asked for the title to be conveyed to him.

The heirs at law, who are appellees here, resisted the recovery of the land by defendant, Morris, and contended that it was the property of decedent and now belongs to them. But appellant, the widow, in her answer alleges that the money advanced by her husband to Morris belonged to her, and amounted when her answer was filed, principal and interest, to $325; that while the title was taken in the name of her husband, the money was hers, and so recognized by him, and that the deed was made to him through inadvertency, which he supposed in law amounted to the same thing, the money being

proceeds of her father's estate, and held as her money by his consent, and was so invested for her, and she thought the deed was taken to her individually.

She gives her consent for Morris to have the land, but asks that the debt be adjudged hers, and for a judgment in her favor therefor and for selling the land to satisfy it.

4. She further alleges that there is a balance on a note given to her husband by one James Carter, to secure which a mortgage upon land was given to decedent, but that the money for which the note was given belonged to her.

Upon the final trial judgment was rendered against her upon the issues tried and from that judgment she has appealed. There being no disposition made by the court below of her claim to the Carter debt and no mention made of it in the judgment, it will not be here noticed, especially as the pleadings are not in a condition to authorize a judgment in respect thereto. · The answer and cross-petition of Morris was dismissed without prejudice, and by the final judgment rendered at the May term, 1878, the tract of land claimed by him was directed to be sold to satisfy debts against the estate, which, though no formal disposition was made in the judgment of the claim of the appellant, was equivalent to a judgment against her upon that issue.

The personal property claimed by appellant as her separate estate was not appraised or claimed by the administrator of the estate. In the first report made by the master commissioner her claim of $318, value of property to which she was entitled that was not set apart, was allowed. But at the November term, 1877, exceptions to the report were filed by both the heirs at law and administrator, which exceptions were sustained, the effect of which was to disallow her claim to the personal property claimed by her as separate estate, and to charge her therewith. Counsel for appellees contend that the issue as to said personal property was determined by that order, and that she has lost her right of appeal therefore. But we do not consider the judgment then rendered as a final judgment, but that the question as to her right to the personal property claimed by her, as well as the debt against Morris, is now properly before this court.

Appellant and her deceased husband were married in the year 1868, and neither of them had any children at the time, nor were any born after the marriage. The evidence shows satisfactorily

that both the personal property claimed by her and the money loaned to Morris, or used in the purchase of the land, belonged to her, she having derived it principally from her father's estate; that her property and money was kept distinct from his, and recognized and treated by him as her separate estate; that he never claimed nor controlled as his own either her money or property, and that the investment made by him in the Morris land was made with her money and for her benefit.

At the April term, 1878, she filed an amended answer in which it is alleged that it was agreed between herself and husband, both before and after their marriage, that the money so received by her should be and remain hers free from his control and not subject to his debts. This answer appears to have been filed, but subsequently to have been objected to, and then it was ordered to be lodged. This was before final judgment, and as the answer corresponded with the proof it was proper to file it, and as the order filing it was not set aside it should be treated as filed of record.

The issue is between appellant and appellees, the heirs at law. As it appears there is sufficient property and assets to pay all the debts against the estate and the creditors can not be prejudiced, the question should be treated as if the issue was between appellant and her husband. Thus treating it we do not find any difficulty in determining it. So long as the husband neglected to reduce the money and property to possession she might have applied to the chancellor and compelled him to make an equitable settlement out of the property; and as she might have done so by proper legal proceedings, there would seem to be no reason why he might not voluntarily settle it upon her out of court. *Campbell v. Galbreath,* 12 Bush (Ky.) 459.

Here the husband might have reduced his wife's property to his possession, but he chose not to do so, but in pursuance of an agreement between them he disclaimed ownership, recognized and treated the property she got from her father's estate as separate estate and never attempted to control nor use it as his own or for his own benefit. We do not see why such an agreement should not be upheld, or why the property should be treated after his death differently from the way he regarded and treated it while living, and the way we are bound to conclude from the evidence he desired and intended it to be treated after his death. There can be no fraud nor injustice done to creditors or innocent purchasers by thus treating it, and as be-

tween the widow who received the property and money from her father's estate, and the brothers and sisters of decedent who have no equitable claim to it, we do not hesitate to say she should have it. She was, therefore, entitled to the personal property claimed by her, and to the amount of the Morris debt, or to the land.

Wherefore, the judgment is *reversed* and cause remanded for further proceedings consistent with this opinion.

*Walker & Hubbard, for appellant.*

*McHenry & Hill, for appellees.*

[Cited, *Wilborn v. Ritter,* 13 Ky. L. 122, 16 S. W. 360.]